**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN RYAN,<br><br>        Plaintiff,<br><br>        v.<br><br>NATUS MEDICAL INCORPORATED, THOMAS J. SULLIVAN, JOSHUA H. LEVINE, ILAN DASKAL, ERIC J. GUERIN, LISA WIPPERMAN HEINE, BRYANT M. MOORE, and ALICE D. SCHROEDER,<br><br>        Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff John Ryan ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Natus Medical Incorporated ("Natus" or the "Company") and Natus' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to ArchiMed SAS through its affiliates, Prince Parent Inc. and Prince Mergerco Inc. (collectively "ArchiMed").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on June 2, 2022. The Proxy recommends that Natus stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Natus is acquired by ArchiMed. The Proposed Transaction was first

1

disclosed on April 18, 2022, when Natus announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which ArchiMed will acquire all of the outstanding shares of common stock of Natus for $33.50 per share (the "Merger Consideration"). The deal is valued at approximately $ 1.2 billion and is expected to close in the third quarter of 2022.

3.      The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Natus management, the financial analyses conducted by Stifel, Nicolaus & Company, Incorporated ("Stifel"), Natus' financial advisor, as well as potential conflicts of interest faced by Company insiders.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Natus' stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Natus' stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Natus.

6.      Defendant Natus is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 3150 Pleasant View Road,

Middleton, Wisconsin 53562. Natus common stock trades on the Nasdaq Global Select Market under the ticker symbol "NTUS."

7. Defendant Thomas J. Sullivan has been a director of the Company since 2019. Defendant Sullivan has served as President and CEO of the Company since December 2021.

8. Defendant Joshua H. Levine has been a director of the Company since 2018. Defendant Levine serves as Chairperson of the Board.

9. Defendant Ilan Daskal has been a director of the Company since 2020.

10. Defendant Eric J. Guerin has been a director of the Company since 2021.

11. Defendant Lisa Wipperman Heine has been a director of the Company since 2018.

12. Defendant Bryant M. Moore has been a director of the Company since 2021.

13. Defendant Alice D. Schroeder has been a director of the Company since 2019.

14. Nonparty ArchiMed is an investment management firm headquartered in Lyon, France.

15. Nonparties Prince Parent Inc. and Prince Mergerco Inc. are legal entities formed by funds managed by ArchiMed to facilitate its acquisition of Natus.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

17. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional

notions of fair play and substantial justice.

18.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

19.     Natus is a provider of solutions to screen, diagnose, and treat disorders affecting the brain, neural pathways, and eight sensory nervous systems. The Company offers hardware, advanced software and algorithms, and consumables that provide stimulus, acquire and monitor physiological signals, and capture the body's response. It has sales in over 100 countries, and offers neurodiagnostics, pediatric retinal imaging, and infant hearing screening, as well as a hearing assessment, hearing instrument fitting, balance, and intracranial pressure monitoring.

20.     On April 17, 2022, the Company entered into the Merger Agreement with ArchiMed.

21.     According to the press release issued on April 18, 2022, announcing the Proposed Transaction:

**Natus Medical Incorporated to be acquired by ArchiMed Group for $33.50 per share in cash**

**Highlights:**

• Transaction values Natus Medical, Incorporated at approximately $1.2 billion total equity value

• Pre-announces preliminary financial results for the first quarter ended March 31, 2022

**MIDDLETON, Wis., April 18, 2022 (GLOBE NEWSWIRE) -- Natus Medical Incorporated** (NASDAQ: NTUS), (the "Company" or "Natus"), a leading provider of medical device solutions to screen, diagnose, and treat disorders affecting the brain, neural pathways, and eight sensory nervous systems, announced

4

today that it has entered into a definitive agreement to be acquired by an affiliate of ArchiMed ("ArchiMed"), a leading investment firm focused exclusively on the healthcare industry for approximately $1.2 billion. Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock, representing a 29% premium to the closing price of the Company's common stock on April 14, 2022.

"The sale of Natus to ArchiMed will provide our shareholders with immediate and substantial cash value, as well as a compelling premium, and the Board has unanimously agreed that this transaction is in the best interests of our shareholders," said Joshua H. Levine, Chairman of Natus.

"Our nearly 1,400 Natus Teammates remain committed to advance the standard of care and improve outcomes and quality of life for patients affected by disorders of the brain, neural pathways, and eight sensory nervous systems," said Thomas J. Sullivan, President & Chief Executive Officer of Natus Medical, Incorporated. "ArchiMed's mix of operational, medical, scientific and financial expertise will help us continue our mission to serve our customers while delivering immediate value to shareholders."

Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock they own. The transaction has fully committed equity financing from funds affiliated with ArchiMed and fully committed debt financing, and there are no financing conditions associated with the transaction.

Natus's Board of Directors has unanimously approved the merger agreement with ArchiMed and recommends that Natus's shareholders adopt the merger agreement. In connection with the transaction, the Company will prepare a proxy statement to be filed with the U.S. Securities and Exchange Commission ("SEC"). Following any review by the SEC, a definitive proxy statement will be mailed to shareholders of Natus. Natus expects to hold a Special Meeting of Shareholders to consider and vote on the proposed merger and the merger agreement as soon as practicable after the mailing of the proxy statement. The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including approval by Natus shareholders and receipt of regulatory approvals. Upon completion of the transaction, Natus will become a private company and Natus shares will no longer be listed on any public market.

Under the terms of the merger agreement, Natus may solicit proposals from third parties for a period of 30 days continuing through May 17, 2022, and in certain cases for a period of 35 days continuing through May 22, 2022. In addition, Natus may, at any time prior to receipt of shareholder approval, subject to the provisions of the merger agreement, respond to unsolicited proposals that constitute or would reasonably be expected to lead to a superior proposal. Natus will have the right to terminate the merger agreement with ArchiMed to enter into a superior proposal

subject to the terms and conditions of such agreement, including payment of a customary termination fee. There can be no assurance that the solicitation process will result in a superior proposal or that any other transaction will be approved or completed. Natus does not intend to disclose developments with respect to this solicitation process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

## B. The Materially Incomplete and Misleading Proxy

22.    On June 2, 2022, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

23.    The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Stifel's fairness opinion, Stifel reviewed "internal financial analyses, financial projections, reports, and other information prepared by its management, including, without limitation, Natus' strategic plan (the "Natus Strategic Plan"), utilized by Stifel pursuant to instructions from Natus." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Natus' management provided to the Board and Stifel.

24.    Notably, Defendants failed to disclose line-item entries forming the basis of the following projected figures: (a) EBITDA; (b) Unlevered Free Cash Flow (without proposed divested assets); and (c) Unlevered Free Cash Flow (plus proposed divested assets).

25.     This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning Stifel's Financial Analyses*

26.     With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to quantify the following data: (a) Natus' projected free cash flow for the calendar year 2026; (b) Natus' terminal values; and (c) the key data, inputs, and assumptions underlying the range of discount rates ranging of 10% to 12% applied by Stifel.

27.     With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the specific financial multiples and metrics for each of the transactions analyzed by Stifel.

28.     Likewise, with respect to the *Selected Companies Analysis,* the Proxy fails to disclose the specific financial multiples and metrics for each company studied by Stifel.

29.     With respect to the *Premiums Paid Analysis*, the Proxy fails to disclose the transactions reviewed in the analysis.  The Proxy also omits the individual premiums observed for each such transaction.

*Materially Incomplete and Misleading Disclosures Concerning the Potential Conflicts of Interest by Company Insiders*

30.     The Proxy also fails to disclose material information concerning Natus' management's potential conflicts of interest.

31.     Specifically, the Proxy fails to disclose if ArchiMed's proposals or indications of interest discussed the retention of Company management within the surviving company following the close of the Proposed Transaction or their purchase of or participation in the combined company's stock or equity.

32.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully

7

informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

33.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

34.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

35.     Further, the Proxy indicates that on April 17, 2022, Stifel reviewed with the Board its financial analysis of the Merger Consideration/Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Natus stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Stifel's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

36.     Plaintiff is immediately threatened by the wrongs complained of herein and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**
**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Defendants have filed the Proxy with the SEC with the intention of soliciting Natus stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

39. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Natus, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Natus shares and the financial analyses performed by Stifel in support of its fairness opinion; and (iii) potential conflicts of interest faced by Company insiders.

42. Moreover, in the exercise of reasonable care, the Individual Defendants knew or

9

should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Stifel reviewed and discussed its financial analyses with the Board during various meetings including on April 17, 2022, and further states that the Board considered Stifel's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

43.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Natus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Natus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

48.   In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.   By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Natus stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 17, 2022                    **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*

13